**INSTITUTE FOR JUSTICE**
Robert Frommer*
Brian A. Morris*
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320
rfrommer@ij.org
bmorris@ij.org

Christen Mason Hebert*
816 Congress Ave., Suite 970
Austin, Texas 78701
(703) 682-9320
chebert@ij.org

*Counsel for Plaintiffs*
**Pro Hac Vice* motions to be filed

**PASHMAN STEIN WALDER HAYDEN, P.C.**
CJ Griffin (NJ Bar No. 031422009)
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 270-4930
cgriffin@pashmanstein.com

*Local Counsel*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (Trenton Vicinage)

| | |
|---|---|
| **HANNAH LOVAGLIO**, <br><br> **J.L.** and **B.L.**, by next friend, Hannah Lovaglio, <br><br> **ERICA JEDYNAK,** <br><br> **JEREMIAH JEDYNAK**, <br><br> **C.J.**, by next friends, Erica and Jeremiah Jedynak, <br><br> *Plaintiffs*, | Civil Action No.: <br><br><br> **Class Action Complaint** |

v.

**KAITLAN BASTON**, Acting
Commissioner of the New Jersey
Department of Health, sued in her
official capacity,

**NANCY SCOTTO-ROSATO**,
Assistant Commissioner for the
Division of Family Health Services,
sued in her official capacity,

*Defendants.*

1.     Plaintiff Hannah Lovaglio and Plaintiffs J.L. and B.L., by

next friend Hannah Lovaglio, who reside at 46 S. Main Street, Cranbury,

New Jersey 08523, along with Plaintiffs Erica Jedynak and Jeremiah

Jedynak, and Plaintiff C.J., by next friends Erica and Jeremiah Jedynak,

who reside at 203 Deerlea Lane, Boonton, New Jersey 07005 (collectively,

"Plaintiffs" or "Named Plaintiffs"), seek declaratory, injunctive, and class

action relief against Defendant Acting Commissioner Kaitlan Baton,

located at 55 North Willow Street, Trenton, New Jersey 08608, and

Defendant Assistant Commissioner Nancy Scotto-Rosato, located at 50

East State Street, Trenton, New Jersey 08608 (collectively referred to as

"Defendants" or "New Jersey"), for the deprivation of Plaintiffs' rights,

and the rights of those similarly situated, under the Fourth and Fourteenth Amendments to the United States Constitution.

## INTRODUCTION

2.    Every baby born in New Jersey is screened for diseases. Shortly after birth, the baby's heel is pricked, blood is collected on a card, and the card is sent to the New Jersey Department of Health's Newborn Screening Laboratory, where the state tests for 62 disorders. This testing is not particularly controversial—every state does it.

3.    New Jersey does not obtain informed consent from the parents before taking blood from their newborn.

4.     Instead, parents are simply given a handout about the testing process. The handout says that New Jersey law requires the blood draw, that early diagnosis of these "rare and serious illnesses" is important, and that parents should "KNOW YOUR RESULTS!"

5.    The problem, however, is with what New Jersey *doesn't* tell parents. After the newborn screening is completed, some blood remains unused.

6.     New Jersey keeps that blood from every baby born in the state *for 23 years*, all without parents' knowledge or consent.

7.     It gets even worse. Not only does New Jersey secretly hold onto the blood for decades, it can use the blood however it wants. There is simply no limit to what New Jersey can do with the blood.

8.     Like many New Jersey parents, Hannah, Erica, and Jeremiah were appalled to learn that the state is keeping their children's blood from the newborn screening program for other, unknown reasons without notice or their consent. And these Plaintiff Parents find it wildly distressing to have no idea where their child's blood may be or end up, what it is being used for, and whether it can be used against their child in the future.

9.     Their concerns are not hypothetical. New Jersey has already given some blood to law enforcement officers without a warrant.

10.     Other states with similar schemes have been caught using babies' blood in alarming ways. In Texas, for example, a lawsuit revealed that the state was turning over blood to the Pentagon to create a national (and someday, international) registry.

11.     On information and belief, Plaintiff Parents expect that New Jersey is likewise turning over their children's blood from its newborn blood stockpile to third parties including the Pentagon.

12.     The Fourth Amendment of the U.S. Constitution guarantees the right of persons to be secure against unreasonable searches and seizures.

13.     In the absence of a warrant, consent, or another exception to the warrant requirement, a search or seizure is per se unreasonable and unconstitutional.

14.     The retention of the blood from the newborn screening program absent a warrant or informed consent violates the Fourth Amendment rights of Hannah, Erica, and Jeremiah's children.

15.     Furthermore, parents have a fundamental due process right to raise their children without undue state interference.

16.     In *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.), the Supreme Court noted that parents' right to direct "the care, custody, and control of their children" is fundamental. Indeed, the Court recognized that the right to make decisions about raising one's children

"is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court" and is "established beyond debate as an enduring American tradition."

17.     What's more, the parental right over the "care, custody, and control of their children" includes the right to make medical decisions for their children. The Third Circuit has explicitly said as much. *See Gruenke v. Seip*, 225 F.3d 290, 306–07 (3d Cir. 2000) (recognizing that a public school violated substantive due process when it pressured a student into taking a pregnancy test absent her mother's knowledge or consent).

18.     New Jersey, however, strips parents of those rights without a compelling reason to do so.

19.     After the medical testing is complete, the state has no legitimate interest in keeping the blood for 23 years (or any amount of time) without parental notice and consent.

20.     As such, New Jersey's retention of the blood violates Plaintiff Parents' fundamental rights under the Fourteenth Amendment' Due Process Clause.

21.    New Jersey's program does not just impact Plaintiffs: It likewise violates the constitutional rights of every parent and of every child born in New Jersey since the newborn screening program began in the 1970s.

22.    Plaintiffs bring this class action to declare unconstitutional New Jersey's retention of blood from the newborn screening program after testing is complete, and to enjoin New Jersey from retaining that blood unless and until it first obtains informed consent to retain the blood for specific, identified purposes.

23.    Plaintiffs bring this civil rights lawsuit under 42 U.S.C. § 1983 for declaratory and injunctive relief for the violation of their constitutional rights and the constitutional rights of all those similarly situated.

## JURISDICTION AND VENUE

24.    This is a civil rights case brought under 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution.

25. This Court has jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202 because the claims arise under the United States Constitution.

26. Venue is proper in this Court under 28 U.S.C. § 1391 because all defendants reside in New Jersey and all or a substantial part of the events or omissions giving rise to the claims occurred in New Jersey.

## THE PARTIES

27. Plaintiff Parent Hannah Lovaglio is a mother who lives in Cranbury, New Jersey. Hannah has two boys, Plaintiffs J.L. and B.L. (ages 5 and 1.5), both of whom were born in New Jersey. Hannah brings this suit on her own behalf, as well as parent-guardian and next friend to her minor children, Plaintiffs J.L. and B.L.

28. Plaintiff Parents Erica and Jeremiah Jedynak are a married couple who live in Boonton, New Jersey. The Jedynaks have one son, Plaintiff C.J., who was born in New Jersey and turns two in December 2023. The Jedynaks bring this suit on their own behalf, as well as parent-guardians and next friends to their minor child, Plaintiff C.J.

29. Defendant Kaitlan Baston is the acting commissioner of the New Jersey Department of Health—the agency in charge of New Jersey's

newborn screening program. She is sued in her official capacity under *Ex parte Young*, 209 U.S. 123 (1908).

30.     Defendant Nancy Scotto-Rosato is the assistant commissioner for the Division of Family Health Services, which oversees the newborn testing program in New Jersey. She is also sued in her official capacity under *Ex parte Young*, 209 U.S. 123 (1908).

## STATEMENT OF FACTS

### *The Newborn Screening Program.*

31.     Since the 1970s, New Jersey has required every baby born in the state to be tested for a wide range of disorders, including cystic fibrosis, hormonal deficiencies, and other immunity and congenital disorders. N.J. Stat. § 26:2-111; N.J. Dep't of Health, *Disorders Screened*, https://tinyurl.com/NJ-Disorders.

32.     Within 48 hours of birth, hospitals prick the heel of each newborn and collect the blood on a paper card—creating "blood spots."[1]

---

[1] The following image comes from a video that New Jersey publishes on its website. N.J. Dep't of Health, *Newborn Screening & Genetic Services*, https://www.nj.gov/health/fhs/nbs/bloodspot/handout/ ["NJDH Video"] (link at the bottom of the page to register and watch at https://attendee.gotowebinar.com/recording/4933247376685884930).



33.    This paper card is then sent to the Newborn Screening Laboratory, which is run by the New Jersey Department of Health at the New Jersey Public Health and Environmental Laboratories.

34.    The lab is located just outside Trenton, New Jersey, and processes more than 100,000 newborn tests each year.

35.    New Jersey does not require parental consent before it takes blood from newborns.

36.    Rather, parents simply receive a handout about the program in the packet of paperwork every new parent receives at the hospital.

37.    This is the entire handout:

**Parent Overview**

All babies born in New Jersey are required by law to receive a newborn blood screen 24-48 hours after their birth. One part of newborn screening is a simple and safe blood test that provides important information about your baby's health.

The blood sample is used to screen for many rare conditions which, if left untreated, may result in serious health problems. A newborn baby can look healthy, but have a serious disease that cannot be seen right after birth. Newborn Screening helps to detect these unseen illnesses. Early diagnosis and treatment may help prevent problems and complications related to these conditions.

The New Jersey Newborn Screening Program currently tests for **60** different disorders and identifies about 150 babies a year who have one of these rare and serious illnesses.

KNOW YOUR RESULTS!  Please check with your baby's doctor to find out your baby's Newborn Screening test results. Results are often available as early as your baby's one-week checkup.  If a repeat test is recommended for any reason, please arrange for it to be completed as soon as possible.

Websites below are written for parents and have lots of good information about Newborn Screening:



http://www.state.nj.us/health/fhs/nbs/
www.BabysFirstTest.org
www.NewbornScreening.info
www.SaveBabies.org



**KNOW YOUR RESULTS!**

38.    Parents may also find out about the screening from nurses.

39.    The handout provides links to four websites as referral sources. Three of these websites are from third parties—not New Jersey. The lone link back to the New Jersey Health Department does not provide any information about the retention of the blood.

40.    Under New Jersey law, however, the hospital's informational obligations are limited to ensuring that "the infant's parent is informed of the purpose and need for newborn screening and given newborn

screening educational materials" provided by New Jersey's Newborn Screening and Genetic Services. N.J. Admin. Code §§ 8:18-1.2–1.4.

41.    New Jersey also has a PowerPoint presentation on its website, which is designed to give an overview of the program to healthcare providers. *See* NJDH Video.

42.    The blood draw and testing are mandatory unless a "parent or guardian objects to the testing on the grounds that testing would conflict with his or her religious tenets or practices." N.J. Admin. Code § 8:18-1.12(a).

43.    There is no requirement that anyone inform parents about their right to object on religious grounds.

44.    New Jersey also gives parents a second notice about the availability of supplemental testing that parents can choose to opt-in and purchase.

45.    The supplemental notice references the "Mandated Newborn Screening" and explains that "New Jersey does not test for every possible birth defect." Any extra testing is performed by a private lab.

46.    This is the supplemental notice:

**State of New Jersey**
**Department of Health**

**NOTICE OF AVAILABILITY OF SUPPLEMENTAL NEWBORN SCREENING**

**Mandated Newborn Screening**
New Jersey law mandates that every baby born in New Jersey receive:
- Newborn Biochemical (Bloodspot) screening
- Hearing screening
- Critical Congenital Heart Defect (pulse oximetry) screening

For more information about the NJ Newborn Screening Program see https://www.nj.gov/health/fhs/nbs/

**Supplemental (additional, optional) screening**
The purpose of this notice is to inform expectant parents that New Jersey does not test for every possible birth defect and that additional, supplemental, testing is available for defects for which the State does not screen, should you choose to pursue further screening.
- **Supplemental** screening is performed by private laboratories and may not be covered by your insurance plan.

The results of any supplemental screening tests are sent to the ordering health professional and NOT to the NJ Newborn Screening Program.

47.    After the screening tests are completed, New Jersey sends the results to the hospital where the baby was born.

48.    If the screening results are abnormal, New Jersey also sends the results directly to the baby's primary care provider.

49.    Regardless of whether the results are normal or abnormal, parents cannot directly access their child's newborn screening results.

### New Jersey Unlawfully Keeps the Unused Blood.

50.    After New Jersey completes the newborn screening tests, there is some unused blood left on the paper card—called a "residual dried blood spot."

51.    New Jersey does not destroy the unused blood; instead, it holds onto it.

52.    In fact, as reported by several news outlets and a prominent newborn screening website to which the New Jersey Department of Health refers parents, New Jersey stores all unused blood in a temperature-controlled room for 23 years after testing.[2]

53.    No New Jersey statute requires unused blood to be destroyed.

54.    No statute authorizes New Jersey to retain the blood either.

55.    Instead, the New Jersey Department of Health has unilaterally determined that it can keep and store the unused blood from every baby born in New Jersey.

56.    New Jersey never tells parents that it will keep their baby's blood after the newborn screening testing is completed.

---

[2] *See, e.g.*, Nikita Biryukov, *Newborn Screening Program Used to Aid Criminal Investigation, Public Defender Says*, N.J. MONITOR (July 13, 2022, 7:44 AM), https://tinyurl.com/NJ-Monitor-BabyBlood; Matt Delaney, *New Jersey Health Officials Gave Police Access to Baby DNA for Criminal Probes, Lawsuit Says*, WASH. TIMES (Aug. 10, 2022), https://tinyurl.com/Wash-Times-BabyBlood; Baby's First Test, *New Jersey*, https://www.babysfirsttest.org/newborn-screening/states/new-jersey (last visited Oct. 17, 2023).

57.   New Jersey never obtains a warrant to retain unused blood.

***New Jersey Gives Blood to Third Parties.***

58.   New Jersey does not just keep the unused blood for itself. Rather, it has been caught giving baby blood to third parties.

59.   Following a lawsuit filed by New Jersey public defenders, it was revealed that New Jersey gave unused blood from its baby blood stockpile to law enforcement officers on multiple occasions.

60.   The officers did not have a warrant to take the blood.

61.   On information and belief, New Jersey also gives or sells blood from its baby blood stockpile to other third parties. This could include, but is not limited to, researchers, companies, or other government agencies.

62.   New Jersey does not tell parents when—or to whom—it gives away or sells their children's blood.

***Plaintiffs Were Appalled to Learn that New Jersey Is Secretly Keeping Their Children's Blood.***

63.   Plaintiff Parent Reverend Hannah Lovaglio is the pastor of a church in New Jersey. Hannah has been married for eight years. Hannah and her husband love New Jersey and have enjoyed raising their family

here. To Hannah, it's the perfect place: Far enough from New York City that it feels like a small-town community, but close enough to still experience all of NYC's restaurants, museums, and culture.

64.    Starting a family was not easy for Hannah. But, with the help of in vitro fertilization, Hannah now has two boys. Both of Hannah's boys were born in New Jersey. Her oldest son, J.L., is now five years old; her younger son, B.L., is a year-and-a-half.

65.    Hannah and her husband are considering whether to have more children in New Jersey. Hannah still has several frozen embryos that are stored in New Jersey.

66.    At birth, New Jersey took blood from both of Hannah's boys through the state's newborn screening program. The newborn testing for both of Hannah's boys came back as normal.

67.    On information and belief, New Jersey retained the unused blood from Hannah's boys after the newborn screening tests were completed—and still has the blood.

68.    New Jersey never asked Hannah whether it could keep her children's unused blood after the testing was completed.

69.    Nor did New Jersey ask Hannah whether it could use her children's blood for other purposes, such as giving or selling the blood to third parties.

70.    When Hannah learned about New Jersey's secret retention of her children's blood, she was appalled. As Hannah sees it, when your baby is born and you're in the hospital, the only concern is for the baby's health and the mother's health—that's it.

71.    So while Hannah would have consented to the initial drawing of her children's blood to test for the 62 diseases in the newborn screening program, she would not have agreed to allow New Jersey to keep her children's blood to use however it wants.

72.    Like any mom, Hannah recognizes that her top priority is protecting her children. That includes protecting and keeping track of her children, their health and medical needs, and everything else about them—including their blood, which contains their DNA and genetic information.

73.    But now Hannah worries about how New Jersey may be abusing its possession of her children's blood.

17

74.    Plaintiff Parents Erica and Jeremiah Jedynak are married and live in Boonton, New Jersey. The Jedynaks love New Jersey and have enjoyed raising their family here. They have a son, C.J., who was born in New Jersey and turns two in December 2023.

75.    At birth, New Jersey took blood from the Jedynaks' son through the state's newborn screening program. The newborn testing for the Jedynaks' son came back as normal.

76.    On information and belief, New Jersey retained the unused blood from the Jedynaks' son after the newborn screening tests were completed—and still has the blood.

77.    New Jersey never asked the Jedynaks whether it could keep their child's unused blood after the testing was completed.

78.    Nor did New Jersey ask the Jedynaks whether it could use their child's blood for other purposes such as giving or selling his blood to third parties.

79.    Erica was horrified and disgusted when she learned that New Jersey was keeping her son's blood in a state facility for what she describes as "a creepy database."

18

80.    To Erica, keeping the blood of an innocent newborn, who has done nothing wrong, is immoral.

81.    Indeed, while the families were still in the hospital during the initial 24 to 48 hours after birth—a time that most parents feel is sacred and special as they meet and begin to care for their new baby—New Jersey took part of the Jedynaks' son and Hannah's children with the intent to keep it and possibly use it against the children decades later.

## CLASS ACTION ALLEGATIONS

82.    Named Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1–81 as if fully stated here.

83.    Named Plaintiffs seek to maintain this action on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23(b)(2).

84.    New Jersey's conduct towards Named Plaintiffs is part of a broader policy and practice, in which the state retains and uses the blood of every child born in New Jersey—without notice or informed consent.

85.    Named Plaintiffs represent two putative classes.

86.    Plaintiff Children J.L. and B.L., by next friend, Hannah Lovaglio, and Plaintiff C.J., by next friends Erica and Jeremiah Jedynak, represent the first putative class (the "Children's Class") with the following proposed class definition:

> All persons born in New Jersey on or after November 2, 2000, whose blood has been or will be retained by New Jersey's newborn screening program.

87.    Plaintiff Parents Hannah Lovaglio and Erica and Jeremiah Jedynak represent the second putative class (the "Parents' Class") with the following proposed class definition:

> All parents or legal guardians of minors born in New Jersey on or after November 3, 2005, whose blood has been or will be retained by New Jersey's newborn screening program.

88.    Plaintiff Children J.L. and B.L., by next friend, Hannah Lovaglio, and Plaintiff C.J., by next friends Erica and Jeremiah Jedynak, and the members of the Children's Class have suffered, and will continue to suffer, constitutional violations under the Fourth Amendment to the United States Constitution for the unlawful retention of blood from the newborn screening program.

89.     Plaintiff Parents Hannah Lovaglio and Erica and Jeremiah Jedynak, and the members of the Parents' Class have suffered, and will continue to suffer, constitutional violations under the Fourteenth Amendment to the United States Constitution for the unlawful retention of blood from the newborn screening program.

90.     Both classes satisfy all requirements under Rule 23(b)(2), including the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)–(4).

91.     Both classes satisfy the numerosity requirement of Rule 23(a)(1). In New Jersey, there are over 100,000 babies born each year. That means New Jersey is stockpiling *millions* of blood spots from the newborn screening program.

92.     Both classes satisfy the commonality requirement of Rule 23(a)(2). Common questions of law and fact will predominate over any individual issues.

93.     Common questions of fact for both the Children's Class and the Parents' Class include, but are not limited to:

a. How is New Jersey using the residual blood from the newborn screening program?

b. What third parties has New Jersey given residual blood from the newborn screening program to?

c. Does New Jersey make a profit from selling residual blood from the newborn screening program?

d. Where does New Jersey store the residual newborn blood?

e. Who is allowed access to the blood retained from the newborn screening program?

f. How is New Jersey storing the blood?

g. Why does New Jersey keep the blood for 23 years?

h. What justification, if any, does New Jersey have to stockpile the residual blood from the newborn screening program?

i. Why does New Jersey not obtain parental consent to stockpile the residual blood from the newborn screening program?

94.    Common questions of law for the Children's Class include, but are not limited to:

> a. Whether the retention of blood from the newborn screening program, after the initial testing is completed, constitutes a "continued seizure" that requires a new justification for New Jersey to keep the blood.
>
> b. Whether the retention of blood from the newborn screening program, without informed consent, a warrant, or a valid warrant exception violates the Fourth Amendment.

95.    Common questions of law for the Parents' Class include, but are not limited to:

> a. Whether parents have the fundamental right to raise their children without undue state interference.
>
> b. Whether parents have the fundamental right to direct the care, custody, and control of their children.
>
> c. Whether parents have the fundamental right to direct the medical care of their children.

23

d. Whether the retention of the blood from the newborn screening program, without obtaining consent from the parents or legal guardians to do so, violates the substantive due process rights of parents under the Fourteenth Amendment.

96.    Under Rule 23(a)(3), the attributes of Named Plaintiffs are typical of the claims of the respective class members in both the Children's Class and Parents' Class. In fact, the claims, facts, and injuries are identical. New Jersey, under the same policy or practice: (a) unlawfully retained blood from Plaintiffs J.L., B.L., and C.J. and every person in the Childrens' Class, and (b) violated the same fundamental rights of Plaintiffs Hannah, Erica, and Jeremiah and every parent or legal guardian in the Parents' Class.

97.    Named Plaintiffs, like all class members, have an interest in obtaining declaratory and injunctive relief that will require New Jersey to either (a) obtain informed consent to keep the blood spots, or (b) return or destroy the blood spots. There is nothing materially different about the

24

relief Named Plaintiffs seek on their own behalf and the relief they seek for members of the Children's Class and Parents' Class.

98.    Named Plaintiffs will fairly and adequately represent both the Children's Class and Parents' Class, satisfying Rule 23(a)(4). Named Plaintiffs are represented by Robert Frommer, Brian Morris, and Christen Hebert at the Institute for Justice and by CJ Griffin of Pashman Stein Walder Hayden, P.C.

99.    The Institute for Justice is a nonprofit, public-interest law firm that, since its founding in 1991, has successfully litigated constitutional issues nationwide. The Institute for Justice also has extensive experience litigating civil rights class actions raising claims under the Fourth and Fourteenth Amendments around the country, including in Philadelphia, Pennsylvania; Seattle, Washington; Pagedale, Missouri; Brookside, Alabama; New York, New York; Los Angeles, California; and Chicago, Illinois.

100.  The classes will also be represented by CJ Griffin of Pashman Stein Walder Hayden, P.C., who has decades of experience litigating in state and federal courts in New Jersey. CJ is the director of Pashman

Stein's Public Interest Center and even has experience litigating the unauthorized use of residual baby blood against New Jersey.

101.  As a result, both classes satisfy Rule 23(a)(1)-(4).

102.  Both classes also meet the requirement of, and are brought in accordance with, Rule 23(b)(2) of the Federal Rules of Civil Procedure. By keeping blood from the newborn screening program absent parental consent, New Jersey has acted, or refused to act, on grounds generally applicable to members of both the Children's Class and the Parents' Class.

103.  Also, insofar as a Rule 23(b)(2) class must be ascertainable, this action satisfies that requirement for both the Children's Class and the Parents' Class. For instance, records within New Jersey's custody or control would identify members of both classes in a manageable process requiring little, if any, individual factual inquiry.

104.  Lastly, to the extent that the Court reads a cohesiveness requirement into Rule 23(b)(2), both classes satisfy that element. Here, there are no individual factual issues that prevent these claims from proceeding on a class-wide basis.

105. The classes are entitled to the requested declaratory and injunctive relief. Thus, a class action is an appropriate method for adjudication of this case under Rule 23(b)(2).

## CONSTITUTIONAL VIOLATIONS

### Count I
### 42 U.S.C. § 1983—Fourth Amendment
### (Unlawful Seizure Claim of Plaintiffs J.L. and B.L., by next friend Hannah Lovaglio, and Plaintiff C.J., by next friends Erica and Jeremiah Jedynak, for themselves and those similarly situated)

106. Plaintiff Children reallege and incorporate by reference the allegations in paragraphs 1–105 as if fully stated here.

107. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

108. The right of the people to be secure in their persons includes property and privacy interests in the possession of their blood and genetic information.

109.  The Fourth Amendment is incorporated against the states through the Fourteenth Amendment to the United States Constitution.

110.  Warrantless searches and seizures are per se unreasonable unless one of the narrow exceptions to the warrant requirement applies.

111.  The initial drawing and collection of baby blood through the newborn screening program is a seizure under the Fourth Amendment.

112.  New Jersey's purpose for the initial drawing and collection of baby blood, and thus, the initial seizure, is to test for 62 diseases.

113.  New Jersey has no property interest in the blood collected for the newborn screening program. Instead, Plaintiff Children, via their parents, maintain their property and privacy interests in the blood.

114.  The retention of the baby blood following testing is a continuing seizure within the meaning of the Fourth Amendment.

115.  If a person or property has been seized, and the justification for that seizure has ended, the government must either:

    a.  End the seizure and return the property, or

    b.  Secure a new justification to continue the seizure.

116.  Once New Jersey completes the testing on the baby blood, the justification for initially collecting the baby blood has ended.

117.  More specifically, once New Jersey completes the newborn screening tests, the justification for the initial seizure of the blood—i.e., the health of the baby—has run its course.

118.  New Jersey does not end its seizure of the baby blood once the testing is complete.

119.  New Jersey does not return the baby blood once the testing is complete.

120.  New Jersey does not secure a new justification for the continued seizure of the baby blood once the testing is complete.

121.  New Jersey has no lawful justification for its continuing seizure of blood from the newborn screening program.

122.  Without a new lawful justification to keep and stockpile the baby blood, New Jersey's continuing seizure violates the Fourth Amendment.

123. No exception to the Fourth Amendment's warrant requirement applies to New Jersey's retention of blood spots after the newborn screening testing is completed.

124. As a result, New Jersey's retention of baby blood for 23 years (or any amount of time post-testing) violates the Fourth Amendment to the United States Constitution.

125. Plaintiffs J.L. and B.L., by next friend Hannah Lovaglio, Plaintiff C.J., by next friends Erica and Jeremiah Jedynak, and the Children's Class are entitled to declaratory relief stating that retaining blood from the newborn screening program absent informed consent violates the Fourth Amendment.

126. Plaintiffs J.L. and B.L., by next friend Hannah Lovaglio, Plaintiff C.J., by next friends Erica and Jeremiah Jedynak, and the Children's Class are also entitled to injunctive relief.

127. The Court should permanently enjoin New Jersey from retaining any blood spots absent informed consent. To that end, the Court should require that, within a year of judgment, New Jersey must either:

    a. Obtain informed consent to continue retaining each blood spot for specific disclosed purposes;

    b. Return each blood spot to the person from whom that blood was drawn or to their parent or legal guardian, if that person is below the age of eighteen (18) years; or

    c. Destroy the blood spot.

128. The Court should also permanently enjoin Defendants from retaining blood from the newborn screening program after testing is completed absent informed consent.

129. To that end, moving forward, this Court should order New Jersey to either:

    a. Obtain informed consent from the parent or legal guardian, meaning that parents are informed of the specific uses that the blood can be used for, before New Jersey retains any blood spot after the newborn screening tests are completed;

    b. Return all blood spots for which New Jersey does not first obtain informed consent to retain the blood for specified uses once the newborn screening tests are completed; or

c.   Destroy all blood spots for which New Jersey does not obtain informed consent to retain the blood for specified uses once the newborn screening tests are completed.

130.  Unless Plaintiffs J.L. and B.L., by next friend Hannah Lovaglio, Plaintiff C.J., by next friends Erica and Jeremiah Jedynak, and the Children's Class obtain the declaratory and injunctive relief requested, they will suffer continuing and irreparable harm.

**Count II**
**42 U.S.C. § 1983—Fourteenth Amendment**
**(Substantive Due Process Claim of Plaintiffs Hannah Lovaglio, Erica Jedynak, and Jeremiah Jedynak, for themselves and those similarly situated)**

131.  Plaintiff Parents reallege and incorporate by reference the allegations in paragraphs 1–105 as if fully stated here.

132.  The due process guarantee of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"

133.  The Due Process Clause protects against state infringement of, among other things, those fundamental rights and liberties that are deeply rooted in our Nation's history and traditions or are implicit in the

concept of ordered liberty. State action that infringes on fundamental rights is reviewed under strict judicial scrutiny.

134. Plaintiff Parents have a fundamental due process right to raise their children without undue state interference.

135. As part of that right, parents have the fundamental due process right to direct the care, custody, and control of their children.

136. That fundamental right of parents to make decisions about the care, custody, and control of their children includes the right of parents to direct their children's medical care.

137. New Jersey's stockpiling of blood from the newborn screening program absent informed consent violates Plaintiff Parents' fundamental right to raise their children without undue state interference.

138. New Jersey's stockpiling of blood from the newborn screening program absent informed consent violates Plaintiff Parents' fundamental rights to make decisions about the care, custody, and control of their children.

139.   New Jersey's stockpiling of blood from the newborn screening program absent informed consent violates Plaintiff Parents' fundamental right to make medical decisions for their children.

140.   There is no compelling reason to allow New Jersey to stockpile blood from the newborn screening program without obtaining informed consent.

141.   Not only does New Jersey's stockpiling of blood from the newborn screening program lack a compelling interest, it is not narrowly tailored to serve any government interest.

142.   For instance, a simple and less-restrictive alternative exists: Simply obtain informed consent to keep the baby blood for specific disclosed purposes.

143.   Unless Plaintiff Parents Hannah Lovaglio, Erica Jedynak and Jeremiah Jedynak, along with the Parents' Class, obtain the declaratory and injunctive relief requested, they will suffer continuing and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

A.    An entry of judgment holding Defendants liable for their unconstitutional conduct;

B.    Certification of both classes under Rule 23(b)(2);

C.    Appointment of Named Plaintiffs as representatives of their respective classes; and

D.    Appointment of the Institute for Justice as class counsel, and appointment of CJ Griffin as local class counsel.

E.    A judgment declaring, on a class-wide basis, that Defendants' retention of blood from the newborn screening program without first obtaining informed consent violates the Fourth Amendment;

F.    A judgment declaring, on a class-wide basis, that Defendants' retention of blood from the newborn screening program without first obtaining informed consent violates the Fourteenth Amendment;

G.    An injunction, as described in paragraph 127, that permanently enjoins Defendants from keeping any blood spots absent informed consent;

H.    An injunction, as described in paragraph 129, that permanently enjoins Defendants from retaining and stockpiling blood spots from the newborn screening program after the testing is completed absent informed consent.

I.    An award of reasonable attorneys' fees and costs; and

J.    Such other relief as this Court deems appropriate.

### LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiffs, by their undersigned counsel, certify that to the best of their knowledge and belief, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration or administrative proceeding in this District.

Dated: November 2, 2023.              Respectfully submitted,

/s/ CJ Griffin
**CJ Griffin (NJ Bar No. 031422009)**
PASHMAN STEIN WALDER HAYDEN, P.C.
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 270-4930
cgriffin@pashmanstein.com

**Robert Frommer***
**Brian A. Morris***
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900

Arlington, Virginia 22203
(703) 682-9320
rfrommer@ij.org
bmorris@ij.org

**Christen Mason Hebert\***
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, Texas 78701
(703) 682-9320
chebert@ij.org

*\*Pro Hac Vice* motions to be filed

*Counsel for Plaintiffs Hannah Lovaglio, J.L. and B.L., by next friend, Hannah Lovaglio, Erica Jedynak, Jeremiah Jedynak, and C.J., by next friends, Erica and Jeremiah Jedynak*