**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HANNAH LOVAGLIO, *et al.*,<br>Plaintiffs,<br>v.<br>KAITLAN BASTON, *et al.*,<br>Defendants. | Civil Action No. 23-21803 (GC) (RLS)<br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants Kaitlan Baston and Nancy Scotto-Rosato's[1] Motion to Dismiss Plaintiffs' Second Amended Complaint (SAC). (ECF No. 78.) Plaintiffs Hannah Lovaglio, Erica Jedynak, and Jeremiah Jedynak opposed, (ECF No. 79), and Defendants replied, (ECF No. 80). Plaintiffs also submitted a supplemental Declaration from Plaintiff Erica Jedynak, (ECF No. 81), to which Defendants responded, (ECF No. 82). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED**.

---

1 Since the inception of this matter, Raynard E. Washington has become Commissioner for the New Jersey Department of Health and Iris Jones has become the Assistant Commissioner for the Division of Family Health Services. *Leadership*, N.J. Dep't of Health, https://www.nj.gov/health/about/njdoh/leadership/ (last visited Oct. 27, 2026). Pursuant to Federal Rule of Civil Procedure 25(d), they have been automatically substituted for former Commissioner Baston and former Assistant Commissioner Scotto-Rosato. (*See* ECF No. 78-3 at 2 n.1.) This change has no bearing on the instant matter.

# I. BACKGROUND[2]

The Court assumes the parties' familiarity with the underlying facts, which are set forth in greater detail in the Court's prior Opinion addressing Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (FAC). *Lovaglio v. Baston*, Civ. No. 23-21803, 2025 WL 2268133 (D.N.J. Aug. 8, 2025). The Court outlines only the factual background necessary to resolve the instant Motion.

Plaintiffs are parents Hannah Lovaglio and Erica and Jeremiah Jedynak (collectively, Parent Plaintiffs) and their respective minor children, J.L., B.L., and C.J. (collectively, Minor Plaintiffs). (ECF No. 66 ¶¶ 14-15.) Lovaglio and her children, J.L. and B.L., previously resided in New Jersey and Lovaglio still has frozen embryos stored in the state, (*id.* ¶¶ 14, 51); Erica and Jeremiah Jedynak and their child C.J. currently reside in New Jersey and the Jedynaks "intend, plan, and resolve to have more children in New Jersey," (*id.* ¶¶ 15, 67). Defendants are the Commissioner of the New Jersey Department of Health (NJDOH) and Assistant Commissioner of the NJDOH Division of Family Health Services, sued in their official capacities pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). (*Id.* ¶¶ 16-17.)

The premise of this action is Plaintiffs' challenge to NJDOH's Newborn Screening Program (NSP), specifically the retention, use, and "potential sharing" of a newborn's remaining blood spots after initial testing for disorders, all without parental consent or a warrant. (*See id.* ¶¶ 2, 9.)

---

2 On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). However, a factual challenge to subject matter jurisdiction under Rule 12(b)(1) "strips the plaintiff of the protections and factual deference provided under 12(b)(6) review"; instead, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and may consider evidence outside of the pleadings. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation modified); *see also Barrentine v. New Jersey Transit*, 44 F. Supp. 3d 530, 535 (D.N.J. 2014).

The state, through the NSP, tests every baby born in New Jersey for a "wide range of disorders." (ECF No. 66 ¶ 18.) Within 48 hours of the baby's birth, healthcare providers at hospitals in New Jersey "puncture" or prick the newborn's heel and collect "blood spots" from the newborn onto a paper card. (*Id.* ¶ 22.) Testing is mandatory unless the baby's parent or guardian objects to testing on religious grounds, (*id.* ¶ 27), although there is no requirement that parents be informed of their right to object on religious grounds, (*id.* ¶ 29). NJDOH does not seek parental consent or a warrant before collecting the blood spots. (*Id.* ¶ 26.) NJDOH sends the test results to the hospital where the baby was born, (*id.* ¶ 32), and subsequently retains the residual dried blood spots, (*id.* ¶¶ 34-35).

At the time this lawsuit was filed, NJDOH stored the residual dried blood spots for twenty-three years after testing. (*Id.* ¶ 36.) In 2024, during the pendency of this matter, Defendants "voluntarily" shortened the retention period of the residual dried blood spots to two years for blood spots that tested negative for any disorders and ten years for blood spots that tested positive. (*Id.* ¶¶ 75-76.) Plaintiffs emphasize that under this new policy, NJDOH still does not obtain parental consent before collecting, testing, or retaining blood spots. (*Id.* ¶ 77.) Further changes to the NSP were implemented in 2024, which are set forth in the Court's prior Opinion, and the allegations regarding the program have not meaningfully changed with the filing of the now operative SAC. *See Lovaglio*, 2025 WL 2268133, at *1-3.

On November 2, 2023, Plaintiffs filed their initial class action Complaint. (ECF No. 1.) On July 19, 2024, the Court permitted Plaintiffs to file an amended complaint following unsuccessful settlement discussions between the parties and the 2024 change to NJDOH's retention policy. (ECF No. 30.) Plaintiffs filed the FAC on August 2, 2024, bringing claims

pursuant to 42 U.S.C. § 1983 against Baston and Scotto-Rosato in their official capacities.[3] (ECF No. 31 ¶¶ 9, 14-15.) In the FAC, Minor Plaintiffs brought a § 1983 claim for unlawful seizure under the Fourth Amendment on behalf of themselves and other similarly situated individuals, seeking declaratory and injunctive relief, (*id.* ¶¶ 156-180), and Parent Plaintiffs brought a § 1983 claim for substantive due process violations under the Fourteenth Amendment on behalf of themselves and other similarly situated individuals, also seeking declaratory and injunctive relief, (*id.* ¶¶ 181-199).

On November 15, 2024, Defendants moved to dismiss the FAC. (ECF No. 45.) The Court granted Defendants' Motion in part and denied it in part. *Lovaglio*, 2025 WL 2268133, at *18. The Court held that both Minor and Parent Plaintiffs failed to demonstrate standing to pursue the requested injunctive relief that "moving forward" and "before" the State retains any newborn blood spot, NJDOH must obtain voluntary, informed consent from the parent or legal guardian. *Id.* at *8. Plaintiffs did demonstrate standing to proceed on the remaining relief requested regarding existing blood spots, *id.* at *12, *14; however, Plaintiffs' remaining claims were dismissed without prejudice as Plaintiffs failed to plausibly plead a violation of the Fourth or Fourteenth Amendments. *Id.* at *17, 18. The Court granted Plaintiffs thirty days to file an amended complaint. *Id.* at *18.

On October 6, 2025, Plaintiffs filed the operative SAC. (ECF No. 66.) Defendants thereafter filed the present Motion to Dismiss. (ECF No. 78.) In the SAC, Plaintiffs again bring two claims under § 1983. Minor Plaintiffs allege unlawful search and seizure under the Fourth Amendment on behalf of themselves and others similarly situated, (ECF No. 66 ¶¶ 138-164), contending they suffered injuries to their "bodily autonomy, bodily integrity, and right to be secure

---

[3] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

against unreasonable searches and seizures" due to NJDOH's extraction, testing, retention, post-testing use, and potential sharing of their blood spots without their consent, (*id.* ¶ 136). Parent Plaintiffs allege violations of substantive due process under the Fourteenth Amendment on behalf of themselves and others similarly situated, (*id.* ¶¶ 165-186), contending they "suffered harm to their rights under the U.S. Constitution's Fourteenth Amendment to direct the care, custody, and control of their children when New Jersey took, tested, retained, and shared their children's blood and genetic information without their prior, informed, parental consent, which interfered and continues to interfere with their right to direct the possession, use, medical testing, and control of their children's blood and genetic information," (*id.* ¶ 137.)

Minor Plaintiffs seek a declaration that "Defendants' retention of their remaining blood, absent voluntary parental consent, violates the Fourth Amendment." (*Id.* ¶ 160.) Minor Plaintiffs also seek an order permanently enjoining NJDOH from "retaining any blood spots post-testing absent parental consent." (*Id.* ¶ 161.) For existing blood spots, Minor Plaintiffs request that within a year of judgment, NJDOH either: (1) "[o]btain parents' consent to continue retaining each blood spot for specific disclosed purposes"; (2) "[r]eturn each blood spot and associated, individualized data, including genetic information to the person from whom that blood was drawn or to their parent or legal guardian, if that person is below the age of eighteen (18) years"; or (3) "[d]estroy the blood spot and associated, individualized data, including genetic information, generated there from." (*Id.* ¶ 162.) For any blood spots obtained in the future, Minor Plaintiffs seek an order requiring NJDOH to either: (1) "[o]btain voluntary consent from the parent or legal guardian before New Jersey retains any blood spot after the newborn screening tests are completed, such that parents are informed of and consent to the specific uses that the blood can be used for"; (2) "[r]eturn all blood spots and associated, individualized data, including genetic information for

which New Jersey has not obtained parental consent to retain the blood for specified uses once the newborn screening tests are completed"; or (3) "[d]estroy all blood spots and associated, individualized data, including genetic information for which New Jersey does not obtain parental consent to retain the blood for specified uses once the newborn screening tests are completed." (*Id.* ¶ 163.) Parent Plaintiffs seek a declaration that "retaining their children's remaining blood for storage, maintenance, and secondary research, absent parents' voluntary consent, violates [their] fundamental rights under the Fourteenth Amendment." (*Id.* ¶ 184.) Parent Plaintiffs seek the same injunctive relief as Minor Plaintiffs for existing and future blood spots. (*Id.* ¶ 185; *see id.* at 56).[4]

## II. LEGAL STANDARD

### A. 12(b)(1)

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999); *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa*, 67 F. Supp. 2d at 438. In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Recom Solar, LLC*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

---

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing Mortensen, 549 F.2d at 891).

**B. 12(b)(6)**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (citation modified). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (citation modified). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that

a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. DISCUSSION

Defendants seek dismissal of the SAC on similar grounds that Defendants sought dismissal of the FAC. First, Defendants argue that Plaintiffs' claims are not justiciable in that Plaintiffs lack standing to proceed, as well as that Plaintiffs' claims are moot and not constitutionally ripe. Defendants also argue that Plaintiffs' claims must be dismissed for failure to state cognizable legal claims under the Fourth or Fourteenth Amendments. The Court will address these arguments in turn.

### A. Standing

The parties dispute whether Plaintiffs adequately allege Article III standing to seek injunctive and declaratory relief. (ECF No. 78-2 at 28-34; ECF No. 79 at 34-39, 43.) In the SAC, Plaintiffs seek an order enjoining NJDOH from retaining *any* blood spots post-testing absent parental consent, which would require this Court to grant relief as to "existing blood spots" as well as "any blood spots that New Jersey obtains in the future." (ECF No. 66 ¶¶ 161, 185; *see id.* at 56.) Plaintiffs also seek declaratory relief in the form of a judgment that: "Defendants' retention of [Minor Plaintiffs'] remaining blood, absent voluntary parental consent, violates the Fourth Amendment," (*id.* ¶ 160; *see also id.* at 55), and "retaining [Parent Plaintiffs'] children's remaining blood for storage, maintenance, and secondary research, absent parents' voluntary consent, violates [Parent Plaintiffs'] fundamental rights under the Fourteenth Amendment," (*id.* ¶ 184; *see also id.* at 55).

Standing turns on the form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To have Article III standing to pursue injunctive or declaratory relief, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to

the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016). In the context of a class action, only the named plaintiff must demonstrate standing; as long as one named plaintiff has standing, the class action will survive dismissal. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 & n.3 (3d Cir. 2015). The Court addresses each of the three standing requirements in turn.

***1. Injury In Fact***

In the FAC, Plaintiffs alleged their harm arose solely from Defendants' retention of blood spots without informed consent and sought injunctive and declaratory relief. *Lovaglio*, 2025 WL 2268133, at *8, *12 ("Despite including such allegations in the FAC, Plaintiffs do not assert that they were harmed by NJDOH providing residual dried blood spots to third parties or to law enforcement. The harm alleged by Plaintiffs is limited solely to the continued retention of Minor Plaintiffs' blood spots without consent[.]"). In the SAC, Plaintiffs now allege that their harm arises from Defendants': (1) post-testing retention of blood spots without a warrant or parental consent, (ECF No. 66 ¶ 136(c) (Minor Plaintiffs); *id.* ¶ 137 (Parent Plaintiffs)); and (2) post-testing use and "potential sharing" of the blood spots without consent (*id.* ¶¶ 136(d)-(f) (Minor Plaintiffs); *id.* ¶ 137 (alleging that Parent Plaintiffs "suffered harm . . . when New Jersey . . . shared their children's blood and genetic information")). The Court notes that the SAC also appears to allege injuries arising from the "physical extraction" and initial testing of blood without a warrant or parental consent, (ECF No. 66 ¶¶ 136(a)-(b) (Minor Plaintiffs); *id.* ¶ 137 (Parent Plaintiffs)). However, in their opposition brief, Plaintiffs represent that "Plaintiffs' challenge isn't to Defendants' initial testing, but to the fact that Defendants hold onto and use children's blood after that testing without consent." (ECF No. 79 at 26-27.) Thus, the Court will not consider any injury

arising from the initial taking or testing of blood. *Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it."); *Doe v. Sebrow*, Civ. No. 21-20706, 2026 WL 976046, at *9 (D.N.J. Apr. 10, 2026) ("A plaintiff who makes a claim but fails to raise the issue in response to a defendant's motion has effectively abandoned his claim." (citation modified)).

When seeking prospective injunctive relief, "a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct." *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 546 (D.N.J. 2014). "Allegations of possible future injury are not sufficient to satisfy Article III" standing. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (citation modified). The threat of future injury may not be "merely imaginary or wholly speculative." *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 855 (3d Cir. 2022), it must instead be "real or immediate," *A.S.*, 66 F. Supp. 3d at 546. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation modified). Conversely, a plaintiff's "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" required for purposes of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 & n.2 (1992).

The Court must first identify the date by which to evaluate Plaintiffs' standing. Standing is generally evaluated "at the time the action commences—that is, at the time the plaintiff brought the lawsuit." *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 354 (3d Cir. 2024) (citation modified). And the filing of an amended complaint "does not restart the date for assessing standing" but rather provides a court with "additional information that can be used to evaluate

standing as of the date that the lawsuit was filed." *Lutter v. JNESO*, 86 F.4th 111, 125 (3d Cir. 2023). However, "[a] supplemental pleading adds post-complaint events to the operative pleading and does not supersede it." *Khal Anshei Tallymawr Inc. v. Twp. of Toms River, New Jersey*, Civ. No. 21-2716, 2022 WL 16701975, at *3 (D.N.J. Nov. 3, 2022). If a court permits the filing of a supplemental complaint, Article III standing is evaluated from the date of the supplemental pleading rather than the filing of the original complaint. *Lutter*, 86 F.4th at 125-26; *see also Greenberg v. Lehocky*, 81 F.4th 376, 384 n.4 (3d Cir. 2023) (evaluating a plaintiff's standing based on a later-filed complaint that challenged a revision to a rule that occurred after the filing of the original complaint).

Plaintiffs argue that the SAC must be considered an amended complaint as "Plaintiffs' claims have remained consistent across all versions of the complaint." (ECF No. 79 at 34-35 n.4.) This Court previously held that Plaintiffs' FAC was a supplemental pleading as it included "post-suit information regarding NJDOH's new retention policy, which became effective on June 20, 2024," after the filing of the initial Complaint. *Lovaglio*, 2025 WL 2268133, at *7. Like the FAC, the SAC also includes allegations regarding NJDOH's retention policy implemented after the filing of the original complaint. (ECF No. 66 ¶¶ 75-108.) As such, the Court concludes that the SAC is an amended pleading and will evaluate Plaintiffs' standing as of August 2, 2024, the date on which the FAC was filed as both pleadings rely on the same "core facts" regarding NJDOH's post-June 20, 2024 retention policy—the policy upon which the Court must assess Plaintiffs' constitutional claims. *See T Mobile Ne. LLC v. City of Wilmington, Delaware*, 913 F.3d 311, 328 (3d Cir. 2019) ("To determine if relation back is proper, the only issue is whether there is a 'common core of operative facts in the two pleadings.' Here, that test is met. Both complaints rely on the same core facts." (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

*a. Retention of Blood Spots*

First, all Plaintiffs allege that they suffer harm from "New Jersey's post-testing, physical retention of [Minor Plaintiffs'] blood without a warrant or parental consent." (ECF No. 66 ¶¶ 136(c), 137.) The Court previously found both Minor and Parent Plaintiffs alleged actual, ongoing harm arising from Defendants' retention of *existing* blood spots without consent. *Lovaglio*, 2025 WL 2268133, at *8-9. Defendants' arguments do not persuade the Court that it should reach a different outcome on this Motion. (*See* ECF No. 78-2 at 30-34.) As this Court previously held, retention of existing blood spots is an "actual, ongoing harm that affords a plaintiff standing to sue for damages, as well as injunctive and declaratory relief," for both Minor and Parent Plaintiffs. *Lovaglio*, 2025 WL 2268133, at *8 (quoting *Kanuszewski v. Mich. Dep't of Health & Hum. Servs. (Kanuszewski I),* 927 F.3d 396, 409 (6th Cir. 2019)).

As to the retention of any *future* blood spots, the Court previously held that all Plaintiffs had failed to allege standing because Minor Plaintiffs would never be subject to the NSP again, and Parent Plaintiffs did not sufficiently allege that they were intending or likely to have more children to demonstrate that a future injury was imminent. *Lovaglio*, 2025 WL 2268133, at *8. The Court finds that Minor Plaintiffs and Parent Plaintiff Hannah Lovaglio continue to lack standing as to the retention of any future blood spots because they have not alleged an actual or imminent injury. *Id.* (collecting cases) (recognizing that a plaintiff's "some day" intentions are insufficient to support a finding of an actual or imminent injury). However, the Jedynak Parent Plaintiffs have sufficiently alleged an imminent injury.

The SAC now includes allegations that Parent Plaintiffs Erica and Jeremiah Jedynak intend to have more children in the future. (*Compare* ECF No. 31 ¶¶ 68-69 (FAC alleging the Jedynaks are "considering whether to have more children in New Jersey" and those children would be

subject to the NSP), *with* ECF No. 66 ¶¶ 67-68 (SAC alleging the Jedynaks "intend, plan, and resolve to have more children in New Jersey" who would be subject to the NSP).) The Jedynaks now allege that they "purchased a 4-bedroom home so that they would have room to grow their family . . . have retained and diligently stored [Minor Plaintiff's] crib, stroller, toys and baby clothes for his sibling to be" and "[t]hey want and are trying for another child." (ECF No. 66 ¶ 67.) And in declarations provided to the Court, the Jedynaks affirm they intend to have more children. (ECF No. 79-1 ¶¶ 7-10 (J. Jedynak Declaration); ECF No. 79-2 ¶¶ 7-9 and ECF No. 81-1 ¶¶ 3-4) (E. Jedynak Declarations).)[5] However, the allegations regarding Parent Plaintiff Lovaglio remain insufficient to establish an actual or imminent injury related to the future retention of blood spots. Lovaglio and her family are "currently in the process of moving" out of New Jersey and while she has "several frozen embryos stored in New Jersey," the SAC does not allege that Lovaglio intends to have additional children in New Jersey, who would be subject to the NSP. (ECF No. 66 ¶¶ 50-51.) Accordingly, only the Jedynak Parent Plaintiffs have satisfied Article III's injury-in-fact requirement to pursue injunctive and declaratory relief regarding Defendants' retention of future blood spots without parental consent.

*b. Use and Sharing of Blood Spots*

Plaintiffs also allege their injuries arise from Defendants' post-testing use and "potential sharing" of blood spots without consent, which they contend also entitles them to the requested injunctive and declaratory relief. (ECF No. 66 ¶¶ 136(c)-(f)) (alleging Fourth Amendment injury to Minor Plaintiffs); *id.* ¶ 137 (alleging Fourteenth Amendment injury to Parent Plaintiffs); *see*

---

[5] In a factual challenge to subject matter jurisdiction "the district court may *not* presume the truthfulness of plaintiff's allegations but rather must evaluate for itself the merits of the jurisdictional claims," and the Court may consider matters outside of the complaint. *Conigliaro v. Chertoff*, Civ. No. 07-1543, 2008 WL 108953, at *2 (D.N.J. Jan. 9, 2008) (citation modified) (emphasis added); *Hartig Drug Co.*, 836 F.3d at 268.

*also id.* at 55-56 (seeking declaratory judgment that "Defendants' continued retention of children's seized blood and associated data post testing for storage, maintenance, and secondary research, without first obtaining voluntary consent," violates the Fourth and Fourteenth Amendments, and injunctive relief "that permanently enjoins Defendants from the continued retention of children's seized blood for storage, maintenance, and secondary research, absent voluntary parental consent").)

The Court finds that Plaintiffs' post-testing use or secondary research allegations fall short of establishing that such future harm is "certainly impending" or there is a substantial risk of such harm to support a finding of standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013). As other courts have previously held, injuries like "[the plaintiffs'] fear of 'the misuse of [the blood samples]'" were too speculative to constitute an injury-in-fact to support prospective relief. *Kanuszewski I*, 927 F.3d at 409; *Doe v. Adams*, 53 N.E.3d 483, 497-98 (Ind. Ct. App. 2016) (holding alleged injury, "a reasonable fear 'that the blood samples, including hers, might be misused,'" too speculative to constitute injury-in-fact); *Higgins v. Texas Dep't of Health Servs.*, 801 F. Supp. 2d 541, 543, 553 (W.D. Tex. 2011) (holding that "the *possible* expropriation of their children's previously taken blood by its release to third parties and those third parties' retention and use of the blood specimens," was too speculative to constitute an injury-in-fact (emphasis in original)).

Defendants' NSP Program Manager attests that Minor Plaintiffs' blood spots "have been used for one purpose only: the initial blood screening" and have never been otherwise used for any purpose or shared with any other party. (ECF No. 78-3 ¶¶ 26, 28, 30.) Minor Plaintiffs' blood spots are slated for destruction under NJDOH's new policy as they are older than two years, and "the [NJ]DOH has no reason to retain these [blood spots] but for Plaintiffs' request for extended

retention" due to this litigation. (*Id.* ¶ 36; *accord* ECF No. 78-4 ¶ 9 (Declaration of NJDOH Administrative Analyst)). In another case where similar evidence was presented on a motion to dismiss—showing that blood spots were not used for medical research, the plaintiffs' blood spots were not shared with third parties, the blood spots were not a "treasure trove of potential DNA evidence," and the plaintiffs could request that their blood spots be destroyed at any time—the court held that "[the plaintiff's] fear of potential misuse is, as the trial court found, 'speculative,' and does not constitute the type of direct injury necessary to support a finding of standing." *Doe*, 53 N.E.3d at 497-98.

Plaintiffs allege that "it was revealed that New Jersey gave blood from its baby blood stockpile to law enforcement officers on at least five occasions" in the past, (ECF No. 66 ¶ 45), but Plaintiffs also acknowledge in the SAC that going forward, "the Attorney General directive states that law enforcement agencies will only be able to obtain blood from the newborn screening program 'in genuinely exceptional circumstances,'" (*id.* ¶ 103). Currently, law enforcement agencies must first "seek approval from the Director of the Division of Criminal Justice" and "explain why this is an exceptional circumstance that necessitates seeking information from the [NSP] and why less intrusive means will not suffice." (*Id.* ¶¶ 104-105.) The Attorney General directive specifically notes that blood spots will only be obtained by either: (1) a court-issued subpoena; (2) a search warrant based on probable cause; or (3) for a missing persons or unidentified-body case, an administrative subpoena or other appropriate court process.[6] New Jersey Attorney General Law Enforcement Directive No. 2024-03, "Investigatory Use of

---

6 "When considering a motion to dismiss pursuant to Rule 12(b)(1), courts may rely on documents outside the pleadings, and may make factual findings." *Roulhac v. Lawler*, Civ. No. 12-311, 2014 WL 940322, at *1 (M.D. Pa. Mar. 11, 2014). However, the Court also notes that this directive is directly cited in the SAC.

Documentary Records and Physical Blood Samples Maintained by the Newborn Screening Program" (June 20, 2024), available at https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2024-03_Physical-Blood-Samples.pdf. Plaintiffs do not challenge the use of blood spots in these limited scenarios nor do Plaintiffs sufficiently allege that the potential sharing of blood spots with law enforcement is "certainly impending" or there is substantial risk as to support standing. *See Clapper*, 568 U.S. at 409, 414 n.5.

Instead, Plaintiffs allege that "[o]n information and belief," New Jersey "gives or sells blood from its baby blood stockpile to other third parties," and "[o]ther states with similar schemes have been caught using babies' remaining blood in alarming ways," (ECF No. 66 ¶¶ 47, 60), but this harm also remains speculative. As the Sixth Circuit explained in a similar case when considering whether minors suffered a substantial risk of harm from use of their blood spots, "[t]he Supreme Court has made clear that 'mere[ ] speculat[ion] and . . . assumptions about' how the government will operate one of its programs is not a sufficiently particularized harm to meet the injury-in-fact requirement." *Kanuszewski I*, 927 F.3d at 410 (quoting *Clapper*, 568 U.S. at 412) (second and third alteration in original). In that case, where the plaintiffs asserted an injury based on the fear that their blood spots would be misused or used for discriminatory purposes, the court found the injury was too speculative even when the plaintiffs argued that "their fears [were] 'well-founded' since blood spots have 'resulted in the arrest of an alleged killer' and 'the wrongful arrest of persons who were not guilty of any crime.'" *Id.* at 409-10. The Court finds Plaintiffs' allegations here suffer from the same speculative shortfall, especially as the NSP Program Manager has confirmed that the laboratory does not release blood spots "to any third-parties in an identified form without parent or legal guardian consent" or "to any third-parties in a de-identified form

unless consistent with federal statutes and regulations," and "*never* sells [blood spots] to *any* person or entity." (ECF No. 78-3 ¶ 22 (emphasis added).)

While the Sixth Circuit in *Kanuszewski I* found that another alleged injury, "that the state or third parties may conduct chemical analysis on the blood samples," was an injury-in-fact as the plaintiffs "allege[d] that this is the very reason why the state retains the samples and why third parties wish to obtain them," 927 F.3d at 410-11, Plaintiffs here do not allege that Defendants conduct any chemical analysis on their blood spots. The post-retention "chemical analysis" discussed in *Kanuszewski I* was conducted to obtain "private medical facts" and "physiological data" for individuals. *See id.* at 407, 410-11, 424. While Plaintiffs allege that the blood spots contain DNA and other genetic information, Plaintiffs do not allege that Defendants conduct any testing or analysis to extract such information. (ECF No. 66 ¶¶ 3, 100.) Instead, Plaintiffs allege that Defendants use the retained blood spots after the initial screening is complete to either conduct "routine quality assurance and quality control" or to "develop[] new tests for disorders," and that any blood spots used for those purposes will be de-identified (ECF No. 66 ¶¶ 80, 95), which is confirmed by the NSP Program Manager, (ECF No. 78-3 ¶ 15). Furthermore, the NSP Program Manager attests that its laboratory "does not perform genome mapping, whole genome sequencing, or any other analysis of individual nucleotides that could possibly identify an individual. Moreover, neither the [NJ]DOH nor [Newborn Screening Advisory Review Committee] has ever recommended conducting genome mapping, whole-genome sequencing, or any other nucleotide-level analysis that could potentially identify an individual" and "[a]n individual cannot be identified based on their [blood spots] alone or based solely on the limited testing performed by the [NSP]." (*Id.* ¶¶ 10, 24.) Therefore, the Court finds that Plaintiffs have not adequately alleged

that the use and "potential sharing" of existing or future blood spots constitutes an injury-in-fact to support standing.[7] *See Doe*, 53 N.E.3d at 497-98.

### *2. Traceability*

For the second prong of standing, traceability, "[t]he plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009). The Third Circuit has held that both but-for causation and concurrent causation are sufficient to satisfy the causal connection required for traceability. *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 855 n.1 (3d Cir. 2022). As they did when moving to dismiss the FAC, Defendants argue that Plaintiffs cannot satisfy the traceability requirement because their alleged injuries are solely attributable to Plaintiffs' refusal to allow Defendants to destroy Minor Plaintiffs' blood spots. (ECF No. 78-2 at 32-34.) The Court previously rejected this argument, *Lovaglio*, 2025 WL 2268133, at *9-12, and does so again.

As this Court previously ruled, "[t]he fact that Plaintiffs chose not to opt out and request destruction does not change the fact that they are, by default, subject to this allegedly unconstitutional retention. That is, the opt-out option does not change the fact that Plaintiffs have been harmed and will continue to be harmed by Defendants so long as Defendants retain the Minor Plaintiffs' residual dried blood spots. *Id.* at *10. Requesting continued preservation of the blood spots after the new mandatory retention period has expired does not disrupt the connection between Plaintiffs' alleged injuries and Defendants' conduct; the alleged injuries arise from the initial

---

[7] Defendants also argue that Plaintiffs' claims regarding future use and sharing of existing blood spots are not constitutionally ripe because they "raise the specter of events that will never in fact occur." (ECF No. 78-2 at 35-36.) Because the Court finds Plaintiffs do not have standing to pursue claims regarding the use or sharing of Minor Plaintiffs' blood spots, the Court need not reach this justiciability argument.

retention without consent. *Id.* For the same reason, Plaintiffs' claims arising out of the retention of existing blood spots are ripe for review.

Defendants argue that this case is now in a different posture, as "[e]very other negative [blood spot] older than two years has been automatically destroyed under the default destruction policy unless parents—like Plaintiffs here—have *opted in* to continued retention." (ECF No. 78-2 at 33 (emphasis in original).) Standing is evaluated as of the date of the pleading. *Lutter*, 86 F.4th at 125-26. The FAC, which the SAC relates back to, was filed on August 2, 2024, and is the date from which this Court will assess standing. (*See* Section III.A.1.a.) On that date, Plaintiffs' alleged injuries were traceable to Defendants. Defendants gave Plaintiffs notice that the Minor Plaintiffs' blood spots were slated for destruction on October 20, 2025, and Plaintiffs objected to that destruction on the same date. (ECF No. 78-2 at 32-33 ("Specifically, *after reviewing the SAC* and confirming that Plaintiffs were still seeking the destruction of the [blood spots] associated with their children, the State emailed Plaintiffs' counsel to give notice[.]" (emphasis added)); ECF No. 78-3 at 20-21 (email exchange).) Even if the Court were to assess standing from the date on which the SAC was filed, on October 6, 2025, Plaintiffs' alleged injuries would be traceable to Defendants as Plaintiffs' request for preservation did not occur until after that filing.

In summary, Plaintiffs have established standing to pursue: 1) a claim for injunctive and declaratory relief based on the alleged violation of Minor Plaintiff's Fourth Amendment rights by Defendants' retention of their existing blood spots; and 2) a claim for injunctive and declaratory relief based on the alleged violation of Parent Plaintiffs' Fourteenth Amendment substantive due process rights by Defendants' retention of their children's existing blood spots, and 3) a claim for injunctive and declaratory relief based on the alleged violation of the Jedynak Parent Plaintiffs'

Fourteenth Amendment substantive due process rights by Defendants' retention of blood spots that may be collected in the future.[8]

### B. Mootness

"[F]ederal courts can entertain actions only if they present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020) (citing U.S. Const. art. III, § 2, cl. 1). A plaintiff must demonstrate standing at the start of litigation, but the "heavy burden" to demonstrate that there is no longer a live controversy shifts to the party claiming that a development during litigation has mooted the case. *Id.* at 305-06; *see also Providence Pediatric Med. Daycare, Inc. v. Alaigh*, Civ. No. 10-2799, 2016 WL 901078, at *4 (D.N.J. Mar. 9, 2016) ("Even if a plaintiff has standing at the time suit is instituted, the case may be dismissed if it becomes moot."), *aff'd sub nom. Providence Pediatric Med. Daycare Inc v. Alaigh*, 672 F. App'x 172 (3d Cir. 2016). In particular, if a defendant argues that its later action has mooted a case—termed voluntary cessation—that defendant bears the heavy burden to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). Courts are "reluctant to declare a case moot [] when the defendant argues mootness because of some action it took unilaterally after the litigation began." *Hartnett*, 963 F.3d at 306.

Defendants argue Plaintiffs' claims should be dismissed based on voluntary cessation, contending that Plaintiffs' claims have been mooted by the implementation of NJDOH's new default policy under which blood spots are automatically destroyed after two years of retention.

---

[8] Defendants do not challenge Plaintiffs' standing based on Article III's third requirement regarding redressability.

(ECF No. 78-2 at 21-28.) The Court rejected this argument in its earlier Opinion as Defendants had not met their "heavy burden" to demonstrate that the allegedly wrongful behavior could not reasonably be expected to reoccur. *Lovaglio*, 2025 WL 2268133, at *12-14. Plaintiffs argue that their claims are not moot because the "core dispute remains the same: whether the State may keep and use children's blood without consent" and as such, the controversy remains live. (ECF No. 79 at 40.)

"Mootness, like standing, turns on the relief sought." *Rd.-Con, Inc.*, 120 F.4th at 356. Plaintiffs seek declaratory and injunctive relief. As to the alleged injury caused by the retention of existing blood spots without consent, Minor and Parent Plaintiffs seek a declaration that Defendants' retention violates their respective Fourth and Fourteenth Amendment rights, (ECF No. 66 ¶¶ 160, 184; *id.* at 55), as well as an order requiring Defendants to either obtain consent to continue retention, return each blood spot, or destroy the blood spots, (*id.* ¶¶ 162, 185; *see also id.* at 56.) For the alleged injury caused by the prospective retention of future blood spots without consent, the Jedynak Parent Plaintiffs seek a declaration that this violates their Fourteenth Amendment rights, (*see id.* ¶ 184, *id.* at 55), as well as an order requiring Defendants to obtain informed consent before retaining blood spots, return blood spots for which consent is not obtained, or destroy all blood spots for which consent is not obtained, (*id.* ¶ 185; *id.* at 56).

The Court previously ruled that NJDOH's new two-year retention policy does not render Plaintiffs' entire case moot. *Lovaglio*, 2025 WL 2268133 at *13. The Court explained that the new policy does not provide Plaintiffs with complete relief because Plaintiffs seek a declaratory judgment that *any* retention of newborn blood spots without voluntary, informed consent is unconstitutional and NJDOH's new policy does not provide for this framework. *Id.* Thus, the Court concluded that the retention of residual dried blood spots without voluntary, informed

consent is still a live controversy in this case and such claims seeking declaratory relief are not moot. *Id.* Defendants have not presented any argument that persuades this Court that it should revisit that prior ruling. *See id.* (citing collection of cases in which courts have found the plaintiffs' claims were not moot where the defendant's conduct was voluntary, as opposed to mandated by statute or regulation).

However, the Court recognized that Plaintiffs' claims for injunctive relief as to the continued retention of Minor Plaintiffs' existing dried blood spots (seeking consent to continue retention of the blood spots, the return of each blood spot, or the destruction of the blood spots) was a "closer call." *Id.* at *14. The Court was not satisfied that Minor Plaintiffs' blood spots would in fact be destroyed under NJDOH's new policy as Defendants themselves acknowledged that only 40% of blood spots older than two years had been destroyed at that time. *Id.* Based on the current record, the Court is now satisfied that the continued retention of Minor Plaintiffs' existing blood spots is solely the result of Plaintiffs' request due to this pending litigation.[9] In a sworn declaration, the NSP Program Manager has confirmed the destruction of all blood spots older than two years, with the exception of those blood spots for which parents affirmatively consented to longer retention, and "[o]nce [blood spots] are destroyed, they are gone forever and cannot be replicated or substituted." (ECF No. 78-3 ¶¶ 19, 35; *accord* ECF No. 78-4 ¶ 9 (Declaration from an NJDOH Analyst).) The Program Manager also attests that Minor Plaintiffs' blood spots are slated for destruction and are only being retained due to Plaintiffs' explicit request.

---

[9] "Factual challenges to a court's subject matter jurisdiction under Rule 12(b)(1) on the grounds of mootness can be raised at any time in the litigation. In conducting this inquiry, a court may consider evidence outside the pleadings." *Molina v. Pa. Soc. Serv. Union*, 392 F. Supp. 3d 469, 478 (M.D. Pa. 2019).

(ECF No. 78-3 ¶ 36; *see also* ECF No. 78-3 at 20-21 (email from Plaintiffs' counsel affirmatively asking NJDOH to preserve Minor Plaintiffs' blood spots).)

Because destruction of Minor Plaintiffs' existing blood spots would afford Plaintiffs the complete injunctive relief they seek, Plaintiffs' claims for injunctive relief regarding Minor Plaintiffs' existing blood spots are moot.[10]

The Court proceeds to analyze Plaintiffs' claims for declaratory relief as to the constitutionality of the retention of existing blood spots, as well as the Jedynak Parent Plaintiffs' claim seeking declaratory and injunctive relief regarding the constitutionality of the retention of future blood spots. *See Lovaglio*, 2025 WL 2268133, at *13 ("[R]etention of residual dried blood spots without voluntary, informed consent is still a live controversy in this case, and such claims are not moot.").

---

[10] Plaintiffs also argue that if the Court finds their claims to be moot, two established exceptions to mootness—the "capable of repetition, yet evading review" exception and the "inherently transitory" exception—apply. (ECF No. 79 at 41-42.) The Court disagrees. A dispute is "capable of repetition, yet evading review" only if: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (citation modified) (emphasis added). Plaintiffs cannot demonstrate that the same controversy will reoccur involving Minor Plaintiffs' existing blood spots, as Minor Plaintiffs' blood spots are subject to automatic destruction, (ECF No. 78-3 ¶¶ 34-36). The narrow "inherently transitory" exception applies only "where it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *In re Fedloan Student Loan Servicing Litig.*, MDL No. 18-2833, 2025 WL 539681, at *13 (E.D. Pa. Feb. 18, 2025), *appeal dismissed,* Civ. No. 25-1533, 2025 WL 2709706 (3d Cir. July 30, 2025) (citation modified). Plaintiffs' claims are not "so inherently transitory" as Defendants retain blood spots for two years post-testing, (ECF No. 66 ¶¶ 76-77, 80), and that period provides sufficient time for a court to consider class certification, which is meant to be decided "[a]t an early practicable time after a person sues or is sued as a class representative," Fed. R. Civ. P. 23(c)(1)(A); *see also In re Fedloan Student Loan Servicing Litig.*, 2025 WL 539681, at *13 (concluding that "the asserted claims are not so inherently transitory as to deprive a court of the time necessary to consider class certification" when "[the d]efendants' conduct took place over a period of years").

### C. Minor Plaintiffs' Fourth Amendment Claim

The Fourth Amendment of the United States Constitution grants individuals the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Defendants argue that Minor Plaintiffs' Fourth Amendment claim must be dismissed because "Plaintiffs do not allege a search during the default retention period, they fail to identify a sufficient possessory interest, and in any event, any search or seizure is reasonable under the special-needs exception." (ECF No. 78-2 at 36-47.) As this Court previously ruled, Plaintiffs have failed to plausibly plead a Fourth Amendment violation as Plaintiffs have failed to identify any New Jersey or federal law recognizing that an individual has a possessory interest in residual dried blood spots for purposes of a seizure under the Fourth Amendment. *See Lovaglio*, 2025 WL 2268133, at *17-18. The SAC now includes conclusory allegations that persons have a possessory or property interest in their "blood and genetic information," (ECF No. 66 ¶¶ 140-141, 144-148), but courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (citation modified). And Plaintiffs have not addressed the line of cases cited in this Court's prior Opinion holding that "[f]or a property interest to be protected, a plaintiff must show a legitimate claim of entitlement to it." *Lovaglio*, 2025 WL 2268133 at *17-18 (citation modified).

Plaintiffs assert for the first time a search-based theory to support their claim for a Fourth Amendment violation. However, Plaintiffs' search-based theory focuses only on the initial heel prick, (ECF No. 66 ¶ 143), and Plaintiffs explicitly state that their "challenge isn't to Defendants'

initial testing, but to the fact that Defendants hold onto and use children's blood after that testing without consent," (ECF No. 79 at 26-27; *see also id.* at 28 (arguing that "Defendants initially *seize* children's blood for testing. But once testing is complete, Defendants' justification runs out." (emphasis added)); ECF No. 66 ¶ 136(c) (alleging that Minor Plaintiffs' injuries arise specifically from "New Jersey's *post*-testing, physical *retention* of their blood without a warrant or parental consent" (emphasis added)); *id.* ¶ 151 (alleging that the "initial *seizure* of blood from children by New Jersey for genetic testing, on the one hand, and New Jersey's *subsequent use and retention* of children's blood on the other, are independent Fourth Amendment events that require independent justification." (emphasis added)).) Indeed, Plaintiffs' SAC seeks no relief related to the initial heel prick. (ECF No. 66 ¶¶ 160-163, 184-185.) Thus, the Court again finds that Plaintiffs have not asserted a Fourth Amendment search claim. *Lovaglio*, 2025 WL 2268133 at *17-18.

To the extent Plaintiffs allege a "second" search based on Defendants' "post-testing use," the Court has already ruled that Plaintiffs lack standing to pursue such claims. (*See* Section III.A.1.b.) Furthermore, the Court agrees with the Sixth Circuit's holding in *Kanuszewski II*, which held that the testing of a blood sample does not constitute a search if it does "not an attempt to find something or to obtain information." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs. (Kanuszewski II)*, 141 F.4th 796, 809 (6th Cir. 2025), *cert. denied sub nom. Kanuszewski v. Shah*, 146 S. Ct. 1826 (2026) (citation modified). The court explained that the uses of the stored blood spots in that case for equipment calibration and improving screening program tests were not searches because they did not reveal any information about the individual plaintiff-children. *Id.* The court also found testing by third parties did not constitute a search because "the third-party researchers [did] not obtain private information about individual plaintiff-children because all blood spots [were] anonymized." *Id.* The same analysis applies here as NJDOH's use of the

residual dried blood spots for "routine quality assurance and quality control" and "developing new tests for disorders," (ECF No. 66 ¶ 80), are not searches because they do not reveal any information about Minor Plaintiffs. *See Kanuszewski II*, 141 F.4th at 809. Neither are the use of any de-identified samples that may be shared with third parties, (ECF No. 66 ¶ 80), *Kanuszewski II*, 141 F.4th at 809 (collecting cases). While blood spots potentially shared with law enforcement would be identifiable, Minor Plaintiffs' blood spots were never shared with law enforcement, and Plaintiffs fail to allege that any future sharing with law enforcement is "certainly impending" to assert such a claim. (ECF No. 78-3 ¶¶ 26, 28, 30; *see* Section III.A.1.b.) As the Court in *Kanuszewski II* explained, "[t]his fact, alone, is dispositive—the Fourth Amendment protects against actuality not potentiality." 141 F.4th at 809.

Plaintiffs cite no caselaw supporting their argument that the alleged injury for which they seek relief, the retention of Minor Plaintiffs' blood spots without consent, is a search in violation of the Fourth Amendment. Instead, the cases Plaintiffs rely on, (ECF No. 79 at 19), were considered in the Court's prior Opinion and remain unpersuasive, as they scrutinize the constitutionality of the initial blood or DNA test, which is not at issue here. *Lovaglio*, 2025 WL 2268133, at *17 & n.15 (distinguishing *Birchfield v. North Dakota*, 579 U.S. 438 (2016), *Schmerber v. California*, 384 U.S. 757, (1966), and *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989)). The additional cases cited in Plaintiffs' opposition brief, (ECF No. 79 at 19-20, 23-25 (citing *Maryland v. King*, 569 U.S. 435 (2013); *Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010); *Ferguson v. City of Charleston*, 532 U.S. 67 (2001))), are likewise unavailing.

*Maryland v. King*, where the Supreme Court held that "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search," 569 U.S. at 446, is not instructive as Plaintiffs do not challenge Defendants' initial heel prick, (ECF No. 79 at 26-27). In

*Reedy v. Evanson*, the Third Circuit held that law enforcement violated the Fourth Amendment when it ordered a drug screening, without a warrant, on the plaintiff's blood samples that were consensually collected for another purpose. 615 F.3d at 224-25, 228-30. The court held that the subsequent testing constituted an unlawful search because the plaintiff did not consent to having her blood tested a second time, at the direction of law enforcement for the purpose of collecting evidence to prosecute her, and that blood, once drawn, is still subject to a reasonable expectation of privacy. *Id.* at 227-29 (citing *Ferguson v. City of Charleston*, 532 U.S. at 71-72 in support). The unlawful search was the subsequent *testing* of the plaintiff's blood after the initial draw, not the *retention* of that blood. *Id.* at 229. While *Reedy* and *Ferguson* may identify privacy interests with regards to the subsequent testing of blood samples, Plaintiffs have not alleged sufficient facts to assert such a claim nor have they identified any privacy interests implicated in the mere *retention* of residual dried blood samples without consent. Accordingly, Plaintiffs have failed to plausibly plead a Fourth Amendment violation due to the retention of existing blood spots based on either a search- or seizure-based theory, and the Court grants Defendants' Motion to Dismiss Minor Plaintiffs' Fourth Amendment claim.[11]

**D. Parent Plaintiffs' Fourteenth Amendment Claim**

The Fourteenth Amendment forbids states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Substantive rights under the Due Process clause include fundamental rights that are not mentioned in the Constitution but are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*,

---

[11] The Court need not reach Defendants' arguments regarding the "special needs" exception under the Fourth Amendment as it has dismissed Minor Plaintiffs' Fourth Amendment claim on other grounds.

521 U.S. 702, 720-21 (1997) (citation modified). Such fundamental rights include the "right of parents to make decisions concerning the care, custody, and control of their children," and specifically, "parents have decision-making authority with regard to the provision of medical care for their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *Doe ex rel. Doe v. Governor of New Jersey*, 783 F.3d 150, 156 (3d Cir. 2015).

Defendants argue that Parent Plaintiffs' Fourteenth Amendment claims as to existing and future blood spots must be dismissed because this Court has already rejected Plaintiffs' claim that the retention of blood spots violates a parent's fundamental right to make medical decisions or decisions about the care, custody, and control of their children.[12] (ECF No. 78-2 at 47-50.) The Court agrees. First, Parent Plaintiffs do not have standing to pursue claims arising from the use or potential sharing of blood spots. Second, as this Court previously held, NJDOH's retention of blood spots without parental consent is *not* a "medical choice" that implicates a parent's fundamental rights. *Lovaglio*, 2025 WL 2268133, at *16-17. Plaintiffs' new reliance upon *Moore v. Regents of the University of California*, 793 P.2d 479 (Cal. 1990), and *Bearder v. State*, 806 N.W.2d 766 (Minn. 2011), (ECF No. 79 at 31-32), does not disturb this Court's prior holding. In *Moore*, the court held that the plaintiff adequately pled a state law claim for breach of fiduciary duty and lack of informed consent—not a constitutional claim—against the defendants "for *using* [the plaintiff's] cells in potentially lucrative medical research without his permission," not for retention of those cells. 793 P.2d at 480, 483-87 (emphasis added). And in *Bearder*, the court held

[12] Given Plaintiffs' representation that their "challenge isn't to Defendants' initial testing, but to the fact that Defendants hold onto and use children's blood after that testing without consent," (ECF No. 79 at 26-27), the Court need not address Defendants' arguments that the initial blood draw and testing do not violate Parent Plaintiffs' substantive due process rights, (ECF No. 78-2 at 48-50).

that retention of blood spots without consent violated a *state* statute, not the Fourteenth Amendment. 806 N.W.2d at 776.

Plaintiffs' citation to the Department of Health and Human Services' (DHHS) regulations governing human research subjects, 45 C.F.R. § 46.116, is also unavailing. (ECF No. 79 at 31.) One of the provisions of the regulation cited by Plaintiffs requires informed consent before "involving human subject in *research*," not retention. 45 C.F.R. § 46.116(a)(1). The other cited provision outlines broad consent requirements "for the storage, maintenance, and secondary research use of identifiable private information or identifiable biospecimens," 45 C.F.R. § 46.116(d), but "agency regulations do not create *substantive* due process rights." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 226 (D.D.C. 2020) (emphasis in original); *see also O'Connell v. Sobina*, Civ. No. 06-238, 2008 WL 144199, at *16 (W.D. Pa. Jan. 11, 2008) ("Federal and state regulations in and of themselves do not create a liberty interest in that procedure."); *Johnson v. Williamson*, Civ. No. 10-1771, 2010 WL 4362454, at *4 (M.D. Pa. Oct. 27, 2010) ("[A]n agency's failure to follow its own regulations does not rise to the level of a constitutional violation unless the regulations themselves are compelled by the Constitution."). As such, the Court holds that Parent Plaintiffs have failed to plausibly plead a violation of the Fourteenth Amendment regarding Defendants' retention of existing blood spots, and the Jedynak Parent Plaintiffs have failed to plausibly plead a violation of the Fourteenth Amendment regarding Defendant's retention of future blood spots. The Court grants Defendants' Motion to Dismiss Parent Plaintiffs' Fourth Amendment claim.[13]

---

[13] The Court need not address the parties' arguments regarding any compelling interest NJDOH may have in retaining the blood spots, (ECF No. 78-2 at 48-50; ECF No. 79 at 32-33), as such analysis applies only when government action burdens a fundamental right and the Court here holds that Plaintiffs have not plausibly pled infringement of any fundamental right.

**E. Dismissal With Prejudice**

"Dismissal with prejudice is appropriate if an amendment would be inequitable or futile." *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, Civ. No. 16-6510, 2019 WL 2281632, at *4 (D.N.J. May 29, 2019). In its prior Opinion, the Court described the deficiencies with Plaintiffs' Fourth and Fourteenth Amendment claims in dismissing the FAC, *see generally Lovaglio*, 2025 WL 2268133, many of which remain present in the SAC. "Courts have discretion to dismiss complaints with prejudice after 'repeated failures to cure the deficienc[ies] by amendments previously allowed.'" *Pryce v. PrimeCare Med.*, Civ. No. 21-753, 2024 WL 3761733, at *5 (E.D. Pa. Aug. 12, 2024) (quoting *Stovall v. Grazioli*, Civ. No. 20-2041, 2023 WL 3116439, at *3 (3d Cir. Apr. 27, 2023)), *aff'd as modified,* Civ. No. 24-2685, 2025 WL 1293077 (3d Cir. May 5, 2025). Because Plaintiffs have had multiple opportunities to amend their Complaint, extending leave to amend again would be futile. Therefore, the Court's dismissal of Plaintiffs' Fourth and Fourteenth Amendment claims is with prejudice.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 78) is **GRANTED.** An appropriate Order follows.

Dated: October 30, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE